J-S55001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID SATCHELL | |
| Appellant | No. 2005 EDA 2015 |

Appeal from the PCRA Order June 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004687-2008

BEFORE:  LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED NOVEMBER 10, 2016**

David Satchell appeals from the order entered in the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  After careful consideration, we reverse and remand the case for an evidentiary hearing.

The PCRA court set forth the relevant facts and procedural history as follows:

> On May 20, 2007, at 2 p.m., 54-year-old Ronald Kennel (victim) was shot at the intersection of 16th and York Streets in North Philadelphia.  While leaving the Red Top Bar, the victim was caught in the crossfire of a gunfight.  He died from a single gunshot wound to the head.  Charlene McDonald was also injured during the incident.  She was standing at the 16th and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

York Street bus stop when the gunshots were fired. As McDonald tried to run, she was shot in her right leg. She spent three days in the hospital and another two years in physical therapy.

That afternoon, the residents of 16th and York Streets were hosting a barbecue competition. Over 30 people were outside preparing for the event. At 2 p.m., [Satchell] and two other men were seen walking west on York Street towards 17th Street. Before the shooting occurred, a neighborhood resident phoned 911, and described a man whom the evidence indicated was [Satchell]. "Young man walking with a gun . . . green shirt with white shirt underneath, wearing blue jeans, light-skinned, just scared half the neighborhood." As Satchell passed by, people yelled, "Get the kids in the house. They have guns." Within moments, gunshots were fired through the crowded area. Satchell and his two friends fired shots on York Street towards 17th Street. Sixteen .40 millimeter fired cartridge casings were recovered near the intersection of York and Bancroft Streets. A second set of shooters, near 17th Street, fired shots towards 16th Street. Four .9 millimeter fired cartridge cases were found on the northeast corner of 17th and York Streets. The bullet recovered from the victim's head indicated that the bullet that killed him was from a 38/9 millimeter firearm.

Derrick Williams saw Satchell fire his gun into the crowd. Williams also saw Satchell with two guns: one was "chrome and brown, then he had this automatic that was black, but it had this long clip that looked like it would hold 40 rounds." After the exchange of gunfire, Satchell and his two friends ran towards Bancroft Street.

Satchell tried unsuccessfully to enter two private homes on Bancroft Street. First, he approached Tracy Lester's home at 2402 Bancroft Street. Lester observed Satchell wearing a green shirt with a white thermal top underneath and saw that he had a gun in his hand as he tried to enter her home. Lester held her door closed as [Satchell] tried to push his way in.

Satchell next tried to enter Daisy Coffey's home at 2404 Bancroft Street. Coffey lived next door to Lester. As Satchell tried to enter Coffey's house, she held her glass security door closed and told him, "you not coming in here." Satchell had a silver gun in his hand. When he could not enter the premises, Satchell

jumped over Coffey's gate into her yard, but hopped right back out after finding a pit bull in Coffey's back yard.

Later that evening, at Temple University Hospital, Lester identified Satchell as one of the shooters to Officer Nona Stokes and described what he had been wearing. Satchell was not arrested until December 19, 2007.

PCRA Court Opinion, 11/13/15, at 3-5.

Following a jury trial, Satchell was convicted of third-degree murder, criminal conspiracy, aggravated assault, and possessing instruments of crime (PIC), for which he was sentenced to an aggregate term of 29 to 62 years in prison. This Court affirmed his judgment of sentence on September 10, 2010, and our Supreme Court denied his petition for allowance of appeal on June 6, 2011.

Satchell filed a *pro se* PCRA petition on September 16, 2011, alleging ineffective assistance of both his trial and appellate counsel. His court-appointed counsel filed an amended PCRA petition on December 19, 2014. The Commonwealth filed a motion to dismiss on February 23, 2015. On May 4, 2015, the PCRA court sent Satchell notice of its intent to dismiss his PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. On June 5, 2015, the court dismissed the petition, and this timely appeal follows.

Satchell raises the following issue for our review:

Did the PCRA Court err by holding, without having conducted an evidentiary hearing, that trial and appellate counsel were not ineffective for failing to present controlling authority on the issue of the applicability of an involuntary manslaughter jury instruction?

Appellant's Brief, at 4.

There has long been a presumption in the law that counsel is "within the wide range of reasonable professional assistance." ***Harrington v. Richter***, 131 S.Ct. 770, 787 (2011). The Pennsylvania Supreme Court has set forth three elements which must all be proven in order to demonstrate ineffective assistance of counsel. ***Commonwealth v. Williams***, 863 A.2d 505, 513 (Pa. 2004) ("Failure to satisfy any prong of the test will defeat an ineffectiveness claim."). A defendant must prove that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffective assistance of counsel caused him prejudice. ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001).

The PCRA court dismissed Satchell's petition because it found that he failed to meet the first prong of the ***Pierce*** test, since he did not prove that the underlying claim of his right to an involuntary manslaughter instruction was arguably meritorious. After reviewing the record and relevant case law, we find that the PCRA court erred by failing to find arguable merit in Satchell's claim.

Defendants are generally entitled to instructions that they have requested and that are supported by the whole of the evidence presented at trial. ***Commonwealth v. Charleston***, 94 A.3d 1012, 1026 (Pa. Super. 2014); ***see also Commonwealth v. Browdie***, 671 A.2d 668, 673-74 (Pa. 1996) ("[W]e hold that a trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict."). Additionally, "if any version of

the evidence in a homicide trial, from whatever source, supports a verdict of involuntary manslaughter, then the offense has been made an issue in the case, and a charge on involuntary manslaughter must be given if requested." *Commonwealth v. Draxinger*, 498 A.2d 963, 965 (Pa. Super. 1985); *see also Commonwealth v. McCloskey*, 656 A.2d 1369, 1372 (Pa. Super. 1995).

Involuntary manslaughter is found where "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, [the defendant] causes the death of another person." 18 Pa.C.S.A. § 2504. At trial, the Commonwealth called Derrick Williams, a close acquaintance of Satchell, who testified that he saw Satchell, with two other men, firing at another group of men through a crowded street. As such, there was evidence in the record that Satchell fired his gun in a reckless or grossly negligent manner, causing the death of the victim. The Commonwealth argues that because Satchell himself testified that he never fired his gun, no evidence was produced on record by Satchell that would justify an involuntary manslaughter instruction. It asserts that the two cases raised by Satchell in his brief, *Draxinger* and *McCloskey*, are both distinguishable because, in those cases, the defendant admitted to a version of the events in which he perpetuated a reckless or grossly negligent act.

The Commonwealth misreads the application of evidence in the record to involuntary manslaughter instructions laid out in *Draxinger*. In that

case, this Court held that evidence "**from whatever source**" would support the instruction. **Draxinger**, **supra** (emphasis added). Here, the Commonwealth called witnesses who testified that Satchell was in the area of the gunfight with a loaded firearm, with at least one witness testifying that he saw Satchell shooting the weapon in a crowded street. Satchell's testimony alone cannot be dispositive, as the evidence in the record supporting the instruction can come from any witness. Therefore, based on the evidence in the record, the jury could reasonably have found Satchell guilty of involuntary manslaughter. As such, there is arguable merit to Satchell's claim that the trial court erred by not giving this instruction.

Given the arguable merit of the underlying claim, we must now determine if Satchell's claim satisfies the other two prongs of the **Pierce** test: that there was no reasonable basis for counsel's decision, and that the ineffectiveness resulted in prejudice to Satchell. With regard to trial counsel, we find that he cannot be deemed ineffective because, at trial, he argued for an involuntary manslaughter instruction and objected when the court declined to give one:

> The Court: Mr. Lammendola, I'm not giving manslaughter.
>
> Mr. Lammendola: I would ask for involuntary, Judge, also. Involuntary is applicable if there's sufficient facts in the case to suggest that if it just may be involuntary. . . . I think the fact pattern or at least factual nature of the case would suggest that I- it would warrant an involuntary manslaughter charge.
>
> The Court: How is the defendant's conduct reckless or grossly negligent?

Mr. Lammendola:  By the fact of having a gun to begin with.

The Court:  The mere fact of possession of the gun?

Mr. Lammendola:  Well, under the circumstances –

The Court:  Would make his conduct reckless or grossly negligent?

Mr. Lammendola:  Well –

The Court:  He claimed he didn't do anything else but get shot at.  He ran.  He never fired his gun, so that's why I looked at it.  I put a Post-it on there that says requested, not given.

Mr. Lammendola:  Note my exception, Judge.

N.T. Trial, 6/17/09, at 64-66.

As the above exchange indicates, trial counsel requested the instruction, but the court did not give it.  Satchell argues that counsel should have, essentially, lectured the judge on **Draxinger** and its progeny in an attempt to sway the court's decision.  However, we find that trial counsel's actions of asking for an instruction, explaining his basis for requesting it, and noting his exception when it was denied were inherently reasonable.  As such, the actions of trial counsel cannot form the basis for PCRA relief.

We now turn to Satchell's claim that appellate counsel was ineffective for failing to raise the issue of the involuntary manslaughter instruction on direct appeal.  As discussed, the involuntary manslaughter instruction was arguably meritorious, and the issue of its denial was preserved by trial counsel.  However, the record as it currently exists is insufficient to enable us to determine whether appellate counsel had a reasonable basis for failing to raise the claim or whether Satchell suffered prejudice as a result thereof.

The PCRA court dismissed Satchell's petition without a hearing, at which appellate counsel could have testified regarding any strategic reasons he may have had for omitting the claim on appeal.[2]  Moreover, the PCRA court did not address the reasonableness and prejudice prongs of the ineffectiveness analysis in its opinion, as it concluded (incorrectly, as we have determined) that Satchell's claim lacked arguable merit.

Accordingly, we remand the case to the PCRA court so that it may hold an evidentiary hearing to determine whether Satchell's appellate counsel had a reasonable basis for failing to raise the involuntary manslaughter claim on appeal and whether Satchell suffered prejudice as a result of that failure.

Order reversed.  Case remanded for proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge Dubow joins the Memorandum.

PJE Stevens files a Dissenting Memorandum.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/10/2016</u>

_____

[2] We concede that we can think of no reasonable basis for counsel's omission of an arguably meritorious claim from an appellate brief.  However, our duty is not to speculate based on an incomplete record.

- 8 -